Simon, J.
The collateral heirs of Leonard B. Compton, who died without leaving any ascendants or legitimate descendants, represented in their petition, that the whole estate of the deceased ought to be divided into four equal portions ; one of them to be inherited by his brother John Compton ; another to go to his sister, Eleanor W. Compton ; a third to be divided between the children and heirs of Philip B. Compton, another brother deceased; and the fourth to be inherited by, and divided between the five legitimate children of Samuel Compton, deceased, also a brother of the deceased, two of whom, in consequence of their having an adverse interest as universal or residuary legatees, under the will of the deceased, are not plaintiffs in this action, but have been made defendants, together with the testamentary executors, and all the legatees named and instituted in the said will.
They allege, that the said L. B. Compton left at his death, a certain instrument in writing, purporting to be his last will and testament, in which A. Prescott and Peter B. Compton are named *58 .testamentary executors. That said instrument has been admitted to probate, and ordered to be executed as the olographic will of the deceased, in certain ex parte proceedings, not binding on the petitioners, and which ought to be annulled, and set aside. They further state, that said instrument ought not to have been admitted to probate, as the same is not valid in law, with respect to form ; but that, if found to be in valid form, all the dispositions and bequests therein contained, are null and void, and ought to be set aside in favor of the legitimate heirs of the deceased.
They further aver, that the dispositions and legacies contained in the second item of the said will, ought tobe annulled, because the legatees, Scipio and Loretta, therein named, are persons interposed, and are not the persons, for whose real use and benefit the legacies are made ; that said legatees, are the children of a colored woman named Fanchon, who lived in open concubinage with the testator, for many years, down to the time of his death; and that the said Fanchon is incapable of receiving any donation from the deceased, mortis causa, of immoveables and slaves. That said Fanchon, is a slave, and, on that account, is incapable of receiving any donation whatever; and that if Scipio and Loretta, are not considered as persons interposed, they are legally incapable of receiving any legacy, because they are the bastard colored children of the deceased, who was a white man, and because no legal marriage could have ever been contracted between Fanchon and the testator, by whom said children could not be, and have never been acknowledged.
They further represent, that the disposition contained in the fifth item, by which a legacy of $20,000 is made to Aaron Prescott, is void in law, because the bequest was not intended by the testator for the use of the legatee, but was made for the benefit of Fanchon, or her two children, to whom said Prescott is charged, by secret instructions, to pay over the same; because said bequest is a substitution, and as such, is reprobated by law; and because said legatee, is not a legitimate relation of the testator.
They further state that, should it be established that Scipio and Loretta are the duly acknowledged natural children of the deceased, they are incapable of receiving from him, by donation, mortis causa, more than one-fourth of his estate, and that the whole of *59 the rest must go to his legitimate relations, and heirs at law, and that the legacy should be reduced accordingly. That the disposition, contained in the third item, is void, because, Pan-chón, a woman of color, in whose favor it is made, is not a legitimate relation of the deceased. And, that the whole of the said testament, is void, because, by law, a testator, who bequeaths any portion of his estate, to natural children, is bound to bequeath the balance thereof, to his legitimate relations. They, therefore, pray that all the legatees, and testamentary executors named in the will, be made parties defendant in this suit; that said will, be annulled and set aside; that the estate be delivered over to the petitioners; or that, if any portion of said will is held valid, then so much of its dispositions, as may be illegal and void, be set aside, and judgment rendered accordingly. ■
The plaintiffs subsequently filed an amended petition, in which they attack certain sales, and other acts of the deceased made during his lifetime, as being disguised donations by him made to Fanchon, Scipio and Loretta, and pray, that the same, be annulled, and the property brought back to the succession; in the mean time propounding interrogatories to Peter B. Compton and A. Prescott, for the purpose of establishing the truth of the allegations therein contained.
All the defendants but one, answer together, by first admitting, that the plaintiffs are the relations of the deceased, as set forth in the petition, but no farther. They aver, that with regard to the legacy made to A. Prescott, the same is good and valid in law. That with respect to the legacy made to Priscilla Young, the same is also good, and ought to be maintained. As to the legacies made to Fanchon, Scipio and Loretta, they deny that the last will of the deceased is void, on any ground whatsoever,, and maintain, that its dispositions, in their favor, are legal, and only subject to reduction, in case it should be found that the bequests, exceed the disposable portion. ■ And, with regard to Amelia, Sarah Jane and Mary Celeste Compton, they all say, that by the disposition contained in the will, they are fully entitled to the whole of the estate of the deceased, after payment of all the other legacies ; that the plaintiffs have really no interest therein, for, should it be decided, that the several bequests, made to the *60 particular legatees, must be reduced, or even, declared null and void, then, and in such ease, the respondents under the provisions of the will, would be entitled to all the benefits of the reductions. They pray accordingly.
Eleanor Compton, the fourth residuary legatee, filed a separate answer, in which she pleads, in substance, the same matters contained in her co-legatees’ answer; maintains that, together with them, she is entitled to the whole of the testator’s estate • that the plaintiffs have no interest therein, and prays that the will of the deceased be declared good and valid, and its dispositions carried into execution, &c.
The clauses of the testator’s will which have given rise to the present controversy, consist in the following: 1. In the item second, he says, “ I do give and bequeath to my two children, ¡S'cijno and Loretta, who have been duly acknowledged by me, my plantation on bayou Robert, on whieh I, at present, reside ] with all the improvements, containing about 545 acres ; all the slaves on said plantation, (whom he names); and it is my will and desire that the said plantation and property be kept as it now stands, &c.; and I do further give and bequeath to each of my said children the sum of ten thousand dollars, it being my intention to give them, and that they shall have one-fourth in value of my estate, &c.
2d. In the third item, he says: “ I give and bequeath to the free woman of color Panchón, all my household and kitchen furniture of all descriptions whatever; also one saddle horse, and my carriage, pair of horses, two patent gold watches, stock of cattle, &c.”
3d. In the fourth item, he says: “ L do give and bequeath to my niece, Priscilla S. Young, now the wife of Richard Young, the sum of six thousand dollars, to be paid out of the money due, or to become due, by my brother John Compton, &c.”
4th. In the fifth item, he gives and bequeathes to his friend and neighbor, Aaron Prescott, the sum of $20,000 ; to be paid out of the first money that may become due the estate, after payment of the debts, &c.”
5th. In the sixth item, he says: “ 1 do hereby give and bequeath all the remainder of my estate that I noto own, or may *61 hereafter acquire, both real and personal, to Amelia French, formerly Amelia Compton, and now the wife of Dr. French, of this parish, and Mary Celeste Compton, both daughters of my brother John Compton, and Eleanor Compton, and Sarah Jane Compton, daughters of my brother Samuel Compton, deceased, to be equally divided between them, that is to say : one-fourth to Amelia, one-fourth to Mary Celeste, one-fourth to Eleanor, and one-fourth to Sarah Jane."
By the two last items, he appoints Aaron Prescott tutor to the two children, Scipio and Loretta, giving him his instructions accordingly; orders that the latter be furnished with funds sufficient for their support and education, &c., and appoints his nephew Peter B. Compton, and the said A. Prescott, his testamentary executors, &c.
This case was thoroughly investigated in the inferior court, under the various pleadings above set forth ; but the Judge, a quo, after having heard all the evidence adduced by all the parties in support of their respective pretensions, conceiving that the plaintiffs had shown no real interest in the succession of the deceased, nor in his last will, which he found to be in due form of law, as an olographic testament, dismissed the present action, and gave judgment against said plaintiffs, who took this appeal.
In point of form, the will attacked in this case, is valid. It is made in the form of an olographic testament, proved to have been wholly written, dated, and signed, in the handwriting of the testator. No further objection was made to its validity in this respect in the lower court, and none was urged before us on the argument of this cause.
Several questions are involved in this controversy, in relation to the dispositions of the will, and the alleged incapacity of the legatees to receive under it. But we are stopped at the threshold by another question, also of some importance, and upon which the judgment appealed from was based, resulting from the defendants’ allegations in their, answers, that the plaintiffs have shown no real or sufficient interest in this action ; since, should it be decided that the several bequests made to the particular legatees ought to be declared null and void,, or at least reduced, as prayed for in the plaintiffs’ petition, the four residuary *62 legatees would be entitled to take and include the amount of the legacies, if annulled, or the difference resulting from the reductions, in the remainder of the testator’s estate. Hence it has been strenuously contended before us, that the plaintiffs had no right to institute this action.
1st. Because, according to the true meaning of the provisions contained in art. 1474 of our Code, the testator could validly dispose of the rest of his estate in favor of the four residuary legatees, who are his legitimate relations, without being bound to dispose of it in favor of all and every one of his legitimate relations ; and that the object of the law is sufficiently fulfilled whenever the balance of the succession, after satisfying the legacy made to the testator’s natural children, is bequeathed to any one, or more, of his legitimate relations.
2d. Because, under our laws, the four residuary legatees named in the will, being universal legatees, are entitled to benefit by the failure of those particular legacies which are to come out of the estate; and because the consequence of such failure only goes to increase the remainder of said estate, without devolving upon the legitimate heirs the right to claim the legacies ; and that, therefore, the plaintiffs have really no interest in attacking the dispositions by them complained of. ■
I. This was one of the questions lately submitted to our solution in the case of Prevost et al. v. Martel et al., decided in the Eastern District. (10 Rob. 512.) We then held, that the provisions of art. 1474, that, “ In all cases in which the father disposes in favor of his natural children, of the portion permitted him by laxo to dispose of, he is bound to dispose of the rest of his property in favor of his legitimate relations ; that every other disposition shall be null, except those which he may make in favor of some public institution,” cannot be understood or construed as making all the legitimate relations of a testator his forced heirs for the three-fourths of his estate ; that said article does not prevent such testator from disposing of the rest of his property in favor of such of his legitimate relations as he may think proper to select; and that, without his being obliged to dispose in favor of all and every one of his said legitimate relations, his giving the balance of his’estate to one or more of *63 them in the proportion fixed by art. 14.73, after satisfying the legacy by him made to.his natural children, is a sufficient compliance with the requisites of the law. indeed, art. 1474 does not appear to have been intended to reserve to the collateral heirs of the testator the exclusive right of inheriting, as his heirs, the proportion which he cannot give to his natural children. The word “ heirs” is not used in the law ; it speaks only of his legitimate relations, among whom he is undoubtedly at liberty to select those to whom the law compels him to give the rest of his estate ; and provided he does not dispose of it in favor of any one who is not his legitimate relation, except, however, in favor of some public institution, we cannot see any valid reason why full force should not be given to the disposition made in favor of the legitimate relation whom the testator has selected, although he should not be one of his direct heirs, and though it should have the effect of excluding his other legitimate relations who are not his forced heirs. Art. 1473 indicates the proportion of his property which a testator may dispose of in favor of his natural children. Such proportion depends upon the degrees of relationship of those who may pretend to claim his estate; and it seems to us, that their right to claim the inheritance, as heirs of the deceased, can only be exercised (unless they be his forced heirs.) in the absence of any disposition by which the rest of the testator’s property would be given to one or more of his legitimate relations. Here, the deceased has given the remainder of his estate to four of his nieces, after having made a legacy to another niece. They are all his legitimate relations, and we feel no hesitation in saying, that so far as the dispositions made in their favor extend, the plaintiffs have no right to disturb them.
II. The question here presented is very different from the one which we had under our consideration in the case of Provost v. Martel, above referred to. In that case the disposition was an absolute, general, and universal one of the whole of the succession property, ude la generality des Mens.” No part of the estate could be considered as remaining undisposed of, under art. 1702, which says: “ Except in the cases prescribed in the two preceding articles, every portion of the succession remaining 'undisposed of, either because the testator has not bequeath *64 ed it, either to a legatee, or to an instituted heir, or because the heir or the legatee has not been able, or has not been willing to accept it, shall devolve upon the legitimate heirs.” And, as an universal legatee, being seized of right, by the death of the testator,'of the effects of the succession, without being bound to demand the delivery thereof, (art. 1602,) is bound to discharge all the legacies, even when he concurs with a forced heir, (art. 1603,) we come to the conclusion, under the authorities therein quoted, that such universal legatee was entitled to benefit from the failure, or reduction of the other legacies ; and that in case of such failure or reduction, he had a right to consider the amount of such failure, or reduction, as a part of the estate, the whole of which had been bequeathed to him by the testator’s will.
But here the disposition is a limited one. The testator gives to his four nieces “ all the remainder of his estate, both real and personal, to be equally divided between them, that is to say: one-fourth to Amelia, one-fourth to Mary Celeste, one-fourth to Eleanor, and one-fourth to Sarah Jane.” And the question occurs : can they look beyond the remainder of the estate, after taking out of it all the previous legacies ; and can they claim, beyond said remainder, whatever amount, or property, would remain undisposed of from the failure or reduction of the said previous legacies 1
It appears to us pretty clear, that the testator never intended to give to his four nieces any part of the property, or money, which he had already bequeathed to others. When he wrote the sixth item of his will, he had already disposed of certain portions of his estate, which he wished to be delivered to the legatees, and in leaving the remainder to be divided and distributed between his four nieces, he necessarily referred to his estate, such as it would be after the payment or delivery of all the previous legacies. He understood that his intentions would be carried into effect ,• that no legacy would fail or be reduced ; and that the balance, and no more, should go to his residuary legatees. If any one of the legacies is to fail, or to be reduced, ■this is independent of the will of the testator, and cannot be viewed but as the mere result of the illegality of his dispositions; and if so, such failure and reduction, which were not included *65 in the remainder of the estate, ought not to enure to the benefit of the residuary legatees, to whom they were not bequeathed, but should be considered as portions of the estate remaining un-disposed of; and under the terms of art. 1702, should devolve upon the legitimate heirs. Denizart, in his Collection de Jurisprudence, verbo Accroissement, § 22, and 23, says : “ En general, les legs particuliers caducs appartiennent au légataire universel, a litre d’accroissément et non a Vhéritier. Mais il y a des cas oü les legs particuliers caducs appartiennent a Vhéri-tier, et non au légataire universel; par exemple, si le testateur, aprés avoir fait des dispositions particuliéres, disoit: Et quant au surplus de mes biens,je les laisse a ... . que j’institue mon légataire universel; alors le légataire ne pourroit avoir que ce surplus, parceque la lettre du testament resiste á Vuccroissement.” In this case the expressions or terms of the disposition seem to be adverse to the right contended for by the residuary legatees, and this, perhaps, would be sufficient to defeat it.
But in a strictly legal point of view, the residuary legatees cannot claim the benefit of the lapsing or reduction of the previous legacies; they are mere legatees under an universal title, and not universal legatees. Our Code, art. 1599, defines an universal legacy to be: “a testamentary disposition, by which the testator gives to one, or several persons, the whole of the property which he leaves at his decease.” This is not the case here, since, after giving one-fourth of his estate to his natural children, and making other particular legacies, the testator leaves the remainder, (of the three-fourths,) to his four nieces. Art. 1604 says, “ The legacy under an universal title, is that by which a testator bequeaths a certain proportion of the effects of which the law permits him to dispose, as a half, a third, or all his im-moveables, or all his moveables, or a fixed proportion of all his immoveables or of all his moveables.” In the case at issue, the law commanded the testator to dispose of three-fourths of his estate in favor of his legitimate relations, after permitting him to give one-fourth thereof to his natural children ; thus, the legitimate relations could not get more than a certain proportion of his property, to wit, three-fourths; and this proportion was not even given, in toto, to the residuary legatees, since a particular legacy *66 of $6000, was bequeathed to another niece of the testator, who, by his sixth disposition, went no further than giving to the residuary legatees a proportion of his estate which could never go beyond the three-fourths thereof, and which was limited to what would remain after satisfying all the previous dispositions. Toul-lier, vol. 5, Nos. 505,506,509. “ C'est done le droit origin aire.” says Toullier, No. 506, “ ou méme éventuel a Vuniversalité des biens du testateur, qui forme le veritable caractére du legs uni-versel.” Here, such right to the whole succession does not exist ; one-fourth is to go to the natural children by a first and previous disposition. The residuary legatees are not seised, of right, of all the effects of the succession ; they are bound to demand the delivery of their portion from the heirs, (art. 1605,) or from the executors, since it consists in the remainder of the three-fourths. Le légataire universel est seul dispensé de démander la deliverance, lorsqu’ il n’y a pas d’ héritier á reserve. Dal-loz, Juris, du 19me Siécle, verbo, Dispos. Entre Yifs et Tes-tara. Chap. 7, sec. 2, art. 1. They are not bound by the will to discharge any particular legacies; (art. 1697 ;) they are to take what may remain; the execution of the will is devolved upon the testamentary executors' therein named; and, under such circumstances, we do not feel authorized to decide that the residuary legatees in this case, should be considered as universal ones.
We are, aware that there may be cases in which the legatee of the residue, or of the remainder of an estate, may claim as universal legatee ; and that, notwithstanding the opinion expressed by Denizart, several French commentators of great weight and authority, such as Toullier, Pothier, Merlin, Duranton, Favard and others, entertain the opinion that if a testator, after making a particular legacy, gives the surplus, or the remainder of his estate to another legatee, the latter should be considered as an universal one ; and this is the purport of a decision reported by Ricard, in which the question was decided in favor of the residuary legatees. See Nouveau Recueil de Denizart, verbo, Accro-issement, § 4, No. 2. Merlin Repert. verbo, Légataire, § 2. p. 177. Toullier, vol. 5, No. 513. But be that as it may, they all agree, that if the legacy of the surplus is preceded by one under an universal title, they are both of the same dignity, from the very ob *67 vious reason that the succession is divided, that neither of the legatees is entitled to the whole, and that the surplus, in such case, cannot include the fixed portion of the estate already disposed of. Toullier, vol. 5, No. 512, says : “ Mais si le testateur com?nengait par fair e un legs a titre universel, et donnait era-suite le restant de tous ses biens a un autre légataire, ce rae se-rait qu ’un legs á titre universel, et non pas un legs universel. ¡Si le premier legs devenait caduc, s’ il était repudié, les Mens accroitraient a V héritier du sa?ig, et non pas au second léga-taire, a qui le testateur n ’ a donné aucun droit sur la portion premierement léguée.” See also Dalloz, loco citato, art. 1, § 5. Duranton, vol. 9, No. 1S6. Delvincourt, vol. 2, § 345. Here again, the testator has given to the residuary legatees no right upon the portion (one-fourth) already bequeathed to his natural children; that fourth is a distinct • and fixed proportion of the succession, making the disposition one under an universal title; and we feel bound to conclude that, if it be true that, from the illegality of the previous dispositions, any one of them should fail or be reduced, they should enure to the benefit of the heirs and not to that of the residuary legatees ; and that, therefore, the Judge, a quo, erred in dismissing the plaintiffs’ action.
We now come to the merits of the controversy; and before examining the objections which are made by the appellants to the various dispositions contained in the will, it behoves us to recapitulate the principal facts established by the evidence.
The record shows, that the testator died in the beginning of the year 1841, leaving no ascendants, or legitimate descendants. His olographic will, dated 1st March, 1840, was opened and proved on the 9th of February, 1841, and the inventory of his estate, amounting in the aggregate to f 184,640, was made on the 13th of the same month ; his debts not amounting to more than $4000. There were also ninety-one bales of cotton made on his plantation in the year of his death. The testimony establishes that the deceased was living in open and notorious concubinage with a mulatress named Fanchon, who, being formerly a slave, was emancipated in April, 1825 ; since then, she was always considered as a free woman of color. Fanchon had several children, two of whom, Scipio and Loretta, are named in the *68 will as being the testator’s children; he always treated them as such, and acknowledged them as his natural children, by regular notarial acts executed on the 14th of May, 1830, and 27th of December, 1837. ■ The deceased caused one of them to be educated in Ohio at' his own expense, and always showed them the affection of a father. It appears that Loretta is dead.
It is admitted in the record that Mrs. P. S. Young, and the four residuary legatees are the legitimate nieces of the testator ; and it appears from the pleadings, that two of them, Eleanor Compton and Sarah Jane Compton, are entitled to inherit from the deceased together with the plaintiffs, as his collateral heirs.
The record further proves, that the legacy made to Aaron Prescott was intended as a fidei-commissum, the amount thereof, according to the instructions of the testator, in a letter to Prescott, dated 5th of March, 1840, to be divided equally between Scipio and Loretta. And it is further established, that a certain tract of land situated on Red River, apparently sold by the deceased to Kelso, on the 25th of April, 1838, was re-sold by the latter to Fanchon on the 27th of the same month; and the testimony proves that said sale was a mere disguised donation. That on the 2d of January, 1840, a donation of a tract of land below Alexandria, was made by B. C. Martin and wife to Scipio and Loretta, and the circumstances disclosed that the same was intended as a disguised-donation from the deceased to his natural children. That on the 15th of June, 1840, a similar donation was made of a tract of 99 acres, by P. B. Compton to Scipio and Loretta, at the instance of the deceased, who paid for the tract; and that on the 17th of May, 1830, an act of direct donation was executed by the deceased to Elizabeth* and Loretta, of a tract of land on bayou Robert, which land was, on the 20th of November, 1835, given by Fanchon to Scipio by notarial act of donation. It is also shown that Fanchon claims to be the owner of a note of hand, due by John Compton for $5000; but that the same was a gift made to her by the deceased. ■' -
*69 Now, what are the objections made by the plaintiffs to the validity of the dispositions contained in the will ?
1. It has been contended that the dispositions in favor of Scipio and Loretta are illegal, upon four grounds : 1. Because they are persons interposed between the testator and Fanchon their mother, who, being the concubine of the deceased, was incapable of receiving any donation, mortis causa, of immoveables or slaves.
2. Because if Scipio and Loretla are not persons interposed, they cannot take under the will, as they are the bastard children of Fanchon, a person of color, begotten by a white man, who could not legally have acknowledged them.
3. Because, if it should be found that they have been legally acknowledged by the testator as his natural children, the dispositions in their favor must be reduced to one-fourth of the estate.
4. Because even if Scipio and Loretta have been duly acknowledged, yet the dispositions in their favor are void, as the testator was bound by law to dispose of the rest of his estate in favor of his legitimate relations. • '
II. That the disposition in favor of Fanchon, forming the third item of the will, is void, because she is not a legitimate relation of the testator.
III. That the bequest to Prescott is á nullity, as he is not a legitimate relation of the deceased, andas said bequest was ‘ secretly intended as a fidei-commissum for the benefit of Scipio and Loretta.
I. 1. This objection is based upon art. 1478 of our Code, which, after saying that “every disposition in favor of a person incapable of receiving shall be null, whether it be disguised under the form of an onerous contract, or be made under the name of persons interposed,” provides, that “ the father and mother, the children and descendants, of the incapable person, shall be reputed persons interposed.'1'1 It is true, Scipio and Loretta are the children of the testator’s concubine, and by art. 1468, the latter could only receive a donation of moveables to one-tenth part of the whole value of the testator’s estate; but the article 'relied on, merely intended to prevent indirect dispositions being made in *70 favor of incapable persons through persons interposed, but did not, and could not, contemplate the case where the children of such incapable person are also the children of the donor or testator ; otherwise, it would amount to an absolute prohibition of the father’s making to them, during the lifetime of the mother, any of those liberalities or donations, which the law permits in certain cases. For instance, by art. 1739 of our Code, a man can only leave to his wife, in the event of their having children, one-tenth in full property of his estate, or a fifth in usufruct; but by art. 1481, he can dispose, under certain circumstances, of one-half, two-thirds, or one-third of his estate; and if he accordingly devises one-third of his property to one of his children, over and above that child’s portion, and said child is perfectly capable by himself of receiving the disposable portion, can it be said, that the disposition is void, because that child’s mother is the testator’s wife, who is incapable of receiving more than one-tenth part of his estate ? Surely not. The child has his own capacity, which he cannot be deprived of; such capacity is given to him bylaw ; and when a disposition is made in his favor, in the exercise of his legal capacity, it matters not that some other person may perhaps benefit from the testator’s liberality; in such a case, if any interposition exist, it should be proved, as it would amount to a fraud which the law cannot presume. So here, if the legatees, Scipio and Loretta, are the duly acknowledged natural children of the testator, they have the capacity of receiving to the extent of one-fourth of the estate of their father, and they cannot be deprived of it under the pretext of their being persons interposed between him and their mother: if such be the case it should be shown. Duranton, vol. 9, No. 833, says: “ Les enfans communs tie sent pas reputes per sonnes interposées ; la qualité d’enfant, respectivement au donaieur et au donataire, est un titre suffisant pour motiver la donation ; et cette donation ne pourrait étre attaquée sous pretexte d'avantage indirect procure au conjoint, lors méme que celui-ci aurait, comma héritier de Venfant, projité de la donation. Le conjoint ne devrait pas pour cela étre considéré comme donataire.” In No. 834 he says : “ Quant aux enfans naturals du conjoint donataire, et recon-nus, ils sont reputes personnes interposéesbut he speaks of *71 those natural children, as being the children of the reputed donee, of the incapable person, and not common to the donor and do-nee : “ C’est uniquement pour excepter les enfans communs.” This doctrine is clearly correct, and is not in conflict with the decision of this court, in the case of Jung et al. v. Doriocourt et al., (4 La. 175,) relied on by the plaintiff’s counsel. In that case, the question of interposition arose between the children of the donee, in whose favor a disposition had been made by the father of their mother, who, (their said mother,) was shown to be the adulterous bastard of the testator, and the heirs of the latter ; and it was held that, as their mother was incapable of inheriting, the claim of the children should be rejected, as that of persons interposed. Those children were not common to the testator and the donee ; they had no legal capacity to receive from their mother’s father; they stood between the incapable and the testator, with no other rights but those of mere strangers to the latter, and the provisions of art. 17, p. 212 of the old Civ. Code, (identical with art. 1478 of the present Code,) were clearly applicable.
2. Our Code, after having, in art. 200, divided illegitimate children into two classes, to wit: “ those born from two persons who, at the moment when such children were conceived, might have legally contracted marriage with each other ; and those who are born from persons to whose marriage there existed, at the time, some legal impediment,” proceeds, in the two subsequent articles, to define who are meant by adulterous and incestuous bastards. Civ. Code, art. 201, 202. The latter can never be acknowledged ; (lb. art. 222;) and although there is a legal impediment to the marriage of a white person, with a free person of color, (art. 95,) the exception does not appear to extend to their illegitimate or natural children ; for, art. 222, says only: that “ such acknowledgment, shall not be made in favor of the children produced by an incestuous or adulterous connection.” Now, art. 221, says, in positive terms, that “the acknowledgment of an illegitimate child, shall be made by a declaration before a notary public, in presence of two witnesses,” and provides that “ No other proof of acknowledgment, shall be admitted in favor of chiU dren of color.” This last proviso, which contains a negative. *72 pregnant with an affirmative, undoubtedly means, that, as we said in the case of Robinett et al. v. Verdun’s Vendees, (14 La. 545,) any other proof of acknowledgment should be excluded, when offered by children of color. It cannot mean any thing else ; for art. 226, by which illegitimate children, who have not been legally acknowledged, are allowed to prove their paternal descent, provided they be free and white, provided also, that free illegitimate children of color may also be allowed to prove their descent, from, a father of color only ; and it is obvious, that this last restriction, was inserted in the law, because, with regard to his white father, an illegitimate child of color, is not allowed to prove that he has been acknowledged, but in the manner pointed out in art. 221, to wit: by authentic evidence, and that, therefore, he cannot resort to any other kind of proof, but when his father is a man of color. This interpretation, has already received the sanction of this court, in the case of Jung v. Doriocourt, above quoted, where it is said, that “ the object of the law is, to exclude illegitimate colored children from any right in their natural father’s estate, who has not acknowledged them and it does not seem to us, to conflict in the least with art. 259, relative to the alimony which natural children may claim from their natural parents. It is true, that'article Axes the limit, to which such alimony should be extended, as to natural children of color; but it clearly corroborates our opinion, that illegitimate colored children are not on the same footing with adulterous or incestuous bastards, since by art. 262, the latter are not entitled to any alimony from their father, but can only claim it from their mother or her ascendants. We think therefore, that Scipio and Loretta could be acknowledged by the deceased ; and as they have been legally acknowledged, and art. 1473 makes no distinction, they should be entitled to the rights allowed them by law as such.
3. This objection is well taken.' It is perfectly clear that, under art. 1473, to wit when the natural father has not left legitimate children or descendants, the natural child or children, acknowledged by him, may receive from him by donation, inter vivos or mortis causa, to the amount of the following proportions, to wit: one-fourth of his property, if he leaves legitimate ascendants, or legitimate brothers or sisters, or descendants *73 from such brothers and sisters; &c.” Scipio and Loretta cannot be allowed more than one-fourth of the testator’s estate ; this he has given them in express terms, by the second item of his will, in which he says : “ It being my intention to give them, and that they shall have one-fourth in value, of my estate, Syc.and if the property bequeathed to them, or given to them in any other way, amounts in value to move than said fourth, which, on a careful inspection of the record, we think it does, it should be reduced so as to limit it to the disposition of the law, and of the testator’s will, and the difference should be considered as property undisposed of.
4. This objection has already been disposed of, on the first point under consideration; but it is meet for us to add, that a correct interpretation of art. 1474, is not adverse to the legacy of one-fourth having its effect, even although the testator had said nothing in his will, with regard to the rest of his property. It is clear, that the object of the law, is that, if he disposes of it, he must give it to his legitimate relations, that is to say, to all or such of them as he may select; but that in the absence of any disposition to that effect, or if he disposes of it in favor of other persons who are not his legitimate relations, it should go to his legitimate heirs in the regular order, without affecting the validity of the disposition of one-fourth, which he is permitted to make by the preceding article.
II. Art. 1468 renders persons who have lived together in open concubinage, respectively incapable of making to each other, whether inter vivos, or mortis causa, any donation of immovea-bles ; and if they make a donation of moveables, it cannot exceed one-tenth part of the whole value of their estate. Thus, if the legacy made to Fanchon stood alone in the will, that is to say, unaccompanied by other dispositions made in favor of other persons also incapable of receiving but to a certain extent, she would undoubtedly be entitled to claim the moveables given to her, not exceeding one-tenth part of the estate of the deceased; but we have already seen that, by the terms of art. 1474, the testator having disposed in favor of his natural children, of the portion permitted him by law so to dispose of, he was bound to dispose of the rest of his property in favor of his legitimate relations, and *74 that every other disposition is absolutely null. The letter of this law is positive; its last disposition is prohibitive in its application ; it destroys the right which the testator might have had of disposing of any other part of his succession indiscriminately; it limits his subsequent dispositions to those made in favor of his legitimate relations, or of some public institution ; and it follows, therefore, that such dispositions as are prohibited should be considered as not written, and that the legacy made to the concubine cannot have any legal effect.
III. It is the same with regard to the bequest made to Prescott. His not being a legitimate relation of the testator taints the disposition made in his favor, with such nullity, as to cause it to be expunged from the testator’s will. It is also illegal and void on the ground of its being a fidei-commissum prohibited by our law, (Civ. Code, art. 1507,) and should be rejected.
With regard to the indirect and disguised donations, and to the direct one made by the deceased to Elizabeth and Loretta, to wit, of a tract of land given to Fanchon, through a person interposed, (Kelso,) on the 27th of April, 1838 ; of two other tracts to Scipio and Loretta, through persons interposed, (R. C. Morton and wife, and P. B. Compton,) on the 2d of January, and 15th of June, 1840; and of another tract to Scipio, by an act of donation first made by the deceased to the said Elizabeth and Loretta, on the 17th of May, 1830, we are satisfied that they were illegally made, and that the property should be restored to the mass of the succession as belonging thereto : but, as Scipio and Loretta are entitled to receive one-fourth of their natural father’s estate, they should have a right to keep their three tracts, if they think proper, at their real value or estimation at the time of the opening of the succession, on account of the portion which is allowed them by law under the testator’s disposition in their favor. As to the tract transferred and indirectly donated to the concubine, and to the note of hand which she claims as belonging to her, and on which she has instituted a suit in the District Court against John Compton,* the drawer thereof, they should *75 be considered as a part of the property of the deceased ; as, under the circumstances of the case, and her peculiar situation, she is not entitled to receive any thing.
With this view of the rights of the parties, we are of opinion that the final partition, settlement, and liquidation, of the succession of the deceased ought to be effected as follows : 1. After forming a general active mass of all the effects, property, and credits which the deceased was possessed of at the time of his death, and of the four tracts of land and note of hand by him illegally given to Fanchon and her children, and deducting therefrom the amount of his debts; all the property and sums of money bequeathed by the testator to his children, and to all the other particular legatees named in the will, as well as the four tracts and note of hand, should be separated from the mass, and the remainder in value or in property should go to the residuary legatees.
2. And after reducing the legacy made to the children, to the one-fourth of the whole estate, and taking the amount of said fourth, as also of the legacy made to Mrs. Young, out of the property, effects, credits, and money so separated from the mass, the balance should go to all the legitimate heirs of the deceased, to be divided between them according to law.
It is, therefore, ordered and decreed, that the judgment of the Court of Probates be annulled ; and it is ordered and decreed, that the legacy made by Leonard B. Compton, in his last will, to his natural children, Scipio and Loretta, be reduced to the one-fourth in value of his estate ; and that said children be allowed nothing beyond said fourth ; that the legacy made to Fanchon, in the third item of the will, be annulled and set aside ; that the legacy made to Mrs. P. S. Young, in the fourth item, be.maintained and paid over to her; that the bequest made to Aaron Prescott, in the fifth item of the will, be also cancelled and set aside ; that the different donations made by the deceased in his lifetime of four tracts of land, and of a note of hand drawn by John Compton, to his concubine Fanchon and her children, be all annulled and set aside, and the property restored to the succession, as a part of the estate of the deceased ; that the disposition of the remainder of his estate, made by the testator in the sixth *76 item of bis will, to his four nieces, Amelia, Mary Celeste, Eleanor, and Sarah Jane Compton, be understood as not including any part of the legacies which have failed or been reduced, nor any part of the property restored to the succession from the annulling of the donations above mentioned; and that, after satisfying the legacy of one-fourth of the estate made to the testator’s natural children, and the particular legacy made to Mrs. Young, all the heirs at law of the deceased be entitled to take the balance, or difference, which may result from the lapsing and reduction of the said legacies', in the manner pointed out in this decision. And it is further ordered and decreed, that this case be remanded to the court, a qua, for the purpose of proceeding to the partition, settlement, and liquidation of the testator’s estate, according to the legal principles recognized in this opinion. The costs in this court to be borne by the defendants and appellees.
Brent, O. N. Ogden, and T. H. Lewis, for the appellants.
Dunbar, Hyams, and Elgee, for the defendants. Flint, Boyce, and Harris, appeared on the same side, for two of the legatees.

 Another child of Fanchon’s.

See the opinion pronounced on appeal, in the case of Fanchon v. Compton, post, p. 76.