Prevost and another v. Martel, Executor, and others.

---

JACQUES L. PREVOST and another, Heirs of Maurice Prevost, deceased, v. PIERRE MARTEL, Testamentary Executor of the deceased, and others.

The will of one who died without legitimate children or descendants, contained the following provision : *J'institue pour ma légataire unique et universelle, ma sœur E. P., lui donnant et lui léguant à ce titre la généralité des biens que je délaisserai à mon déces.*   *Held*, that this was an absolute institution of an universal heir, by which the legatee became entitled to the whole estate of the testator, and, after the death of the testator, seized of right of the effects of the succession, without being bound to demand the delivery thereof.   C. C. 1599, 1602.

Art. 1474 of the Civil Code, which declares that where the father disposes in favor of his natural children of the portion permitted by law to be so disposed of by him, he shall dispose of the rest of his property in favor of his legitimate relations, un less he bequeath the rest to some public institution, does not constitute his legitimate relations his forced heirs for the rest of his estate.   He is bound to dispose of the rest of his property in favor of his legitimate relations, but he may bequeath it to such of them, one or more, as he may select.

Except in the case of accretion from legacies made to several conjointly, as provided for by arts. 1700, 1701 of the Civil Code, the legitimate heirs of a testator will inherit from him only such portion of the succession as may remain undisposed of, either because the testator has not bequeathed it to any legatee or instituted heir, or because the heir or legatee has not been able or willing to accept it. C. C. 1702. Legatees by an universal or particular title, benefit by the failure of the particular legacies which they were bound to discharge (C. C. 1697); and an universal legatee, when he concurs with a forced heir (C. C. 1603), and, *à fortiori*, when he does not, is bound to discharge all the legacies, except in case of reduction. Consequently, where a testator, dying without legitimate descendants, but leaving several brothers and sisters, institutes one of them his universal heir, such universal heir or legatee will be entitled to the benefit resulting from the failure or reduction of the particular legacies, to the exclusion of the other brothers and sisters.

Where the instituted heir consents to the execution of the particular legacy, the particular legatee cannot contest the right of the legitimate heirs to attack his legacy as illegal. The unwillingness or refusal of the instituted heir to contest the particular legacy, cannot render it valid; and the particular legatee being incapable of receiving, and the instituted heir unwilling to accept it, the particular legacy remains undisposed of, and must, under article 1702 of the Civil Code, devolve upon the legitimate heirs.

A testator, dying without descendants, instituted one of his sisters his universal heir. Another sister, and a surviving brother commenced an action against the executor of the deceased, the particular legatees, and the instituted heir, for the purpose of causing the legacies to be declared null. The instituted heir answered, through her attorney in fact, that plaintiffs could not attack the will, as the respondent, being the universal legatee of the testator, was entitled to claim the whole of his estate ; averred that the dispositions of the will were legal and valid; and prayed that the petition might be dismissed, and the will maintained in all its parts. *Held*, that the averment of the validity of the will, and the prayer for its execution, do not amount to an acquiescence, on the part of an instituted heir, in the illegal dispositions, nor to a consent that the legatees shall take the legacies, notwithstanding their illegality.

An attorney in fact defending an action on behalf of his principal, unless specially empowered, cannot, by any allegations or confessions in the judicial proceedings, renounce or abandon any of the rights of his principal.

APPEAL from the Court of Probates of New Orleans, *Bermudez*, J.

SIMON J. The petition represents that the plaintiffs, together with Emilie Prevost, the widow Majastre, are the only legitimate heirs of one Maurice Prevost, who died in March, 1843, leaving an olographic will, which was subsequently opened and proved by proceedings had before the Court of Probates; that the deceased, by his said will or testament, bequeathed a

certain portion of his immovable property to one Florestine Cé-
cile, a free woman of color, and all his moveable estate to one
Clarisse, also a free woman of color, and that these legacies,
together with the emancipation of several of his slaves, being
duly executed, he instituted his absent sister, the widow Ma-
jastre, the universal legatee of the remainder of his estate.
They further allege, that the legacies made to Clarisse and Flo-
restine are void and illegal, and ought to be set aside, because
Clarisse was his concubine, and could not receive any greater
portion than that allowed by law; and because Florestine is
the bastard daughter of the deceased, begotten by him from his
said concubine, and is by law incapacitated from receiving any
thing by testament; wherefore, they pray that the testamentory
executor of the deceased, the said legatees, Clarisse and Flores-
tine, and the absent universal legatee, the widow Majastre,
who has an agent in the State, be all made parties to this suit;
that those parts of the will which bequeath any property real
or personal to the said particular legatees be annulled and set
aside; that they, the plaintiffs, together with Emilie Prevost,
be declared to be the legitimate heirs of said deceased; and that
the special legacies made to Clarisse and Florestine be declared
vacant and undisposed of, and be, as such, divided between the
three heirs, &c.

The plaintiffs subsequently filed two supplemental petitions,
in the first of which they state, that they have been informed
that the immovable property bequeathed by the testator to
Florestine, has been by him alienated, but that the testament
provides that, in case the property should not be found in kind
in the succession, then a sum of $5000 is to be paid to the le-
gatee in lieu thereof. In the second, they allege that Florestine
Cécile, being the child of Clarisse, who was notoriously the con-
cubine of the deceased, is but a person interposed by the testa-
tor, for the purpose of evading the provisions of the law, and of
bequeathing to Clarisse a greater portion of his estate than is
allowed by law.

The widow Majastre joined issue, through her attorney in
fact, who pleaded; 1st. That admitting the plaintiffs to be the
brother and sister of the deceased, they have no right to assail

his last will and testament, in as much as the respondent, being the universal legatee of the testator, is the only person entitled in any case to claim the whole of his estate. 2d. She denies the allegations contained in the plaintiffs' petition, and asserts that all the dispositions contained in the will of the testator are legal and valid and must be maintained; wherefore she prays that the will of the deceased be executed in all its dispositions, and that the plaintiffs' demand be dismissed.

Florestine Cécile also filed her answer, in which she begins by denying that the plaintiffs have any color of interest, or show any capacity that could give them any right to prosecute this suit, averring that its decision can by no means benefit or prejudice them, and that, on this ground alone, they ought to be dismissed. She further denies the allegations of the plaintiffs' petition respecting the relation in which she stood towards the testator; and alleges that, being born a slave, she was, at the age of three years, emancipated by an individual named Miguel Constant, who considered her as his daughter, &c.; and she further specially denies all the allegations of the said petition whereby the dispositions favorable to her in the last will of the deceased are sought to be annulled and destroyed, and prays that said will be maintained, and declared legal and valid, &c.

This case was tried below on the question of interest only; the widow Majastre pretending that the plaintiffs have no right to claim any part of the testator's estate, even supposing the legacies contained in his will were illegal or subject to be reduced, because, as universal legatee duly instituted by the said will, she is entitled to inherit the whole of the testator's estate, to the exclusion of his other legitimate collateral relations; and accordingly we find in the record a written consent, signed by all the counsel of the parties, in the following words: "At the request of the plaintiffs in this case, the question raised by way of exception, which denies the right claimed by said plaintiffs of having, in preference to the universal legatee, the benefit of any failure in the particular legacies devised by the will, was alone submitted to the decision of the court. In the actual state of proceedings, the plaintiffs consider that unless they be maintained in the position which they have assumed in

relation thereto, they can have no interest in the suit, and must be dismissed. But should this preliminary question be decided in their favor, then the case being remanded, they would of course be at liberty to bring their evidence before the inferior tribunal, and to try the facts on their merits."

The judge *a quo* being of opinion that, according to the spirit of articles 1474 and 1702 of the Civil Code, every portion of the succession, disposed of against the prohibitions of the law, must devolve upon the heirs of blood of the testator, overruled the defendant's exception of want of interest in the plaintiffs; and from this judgment, the widow Majastre, the executor, and Florestine Cécile have appealed.

The disposition of the will relied on by the widow Majastre, as instituting her the universal heir or legatee of the testator, is as follows: *J'institue pour ma légataire unique et universelle ma sœur Emilie Prevost, veuve Majastre, résidente à New York, lui donnant et lui léguant à ce titre, la généralité des biens que je délaisserai à mon décès.*" This institution is clear and explicit; it is subject to no condition; it is an absolute institution of an universal heir, by which the legatee becomes entitled to take, not *the remainder* of the succession, as it is alleged in the petition, but *the whole estate* of the testator, and by which the universal legatee, after the death of the testator, *is seized of right of the effects of the succession,* without being bound to demand the delivery thereof. Civil Code, articles 1599, 1602. Thus, it is clear, that the testator has left nothing undisposed of.

The judgment appealed from, however, on the supposition that the particular legatee is the natural child of the testator, intimates, though it does not decide the question absolutely and directly, that under the provision contained in article 1474 of the Civil Code, the plaintiffs must be entitled to recover their portions of the estate of the deceased, as also by the terms of article 1702, which, he says, are calculated to protect good morals, and have also the direct tendency to avoid agreements and understandings between the testator and his testamentary heir, which might defeat or impair the object of the law.

Article 1474 says, that "*in all cases in which the father disposes, in favor of his natural children, of the portion permitted him*

*by law to dispose of, he is bound to dispose of the rest of his proper-*
*ty in favor of his legitimate relations."* We cannot understand
this provision of our law as making the legitimate relations of
a testator *his forced heirs* for the three-fourths of his estate,
when, having brothers and sisters, he wishes to dispose, under
article 1473, of the one-fourth of his property in favor of his
natural child. It only indicates that he shall be bound to be-
queath the rest of his estate to his legitimate relations, that is
to say, to such of his legitimate relations as he may think pro-
per to select; and it seems to us that, without being obliged to
dispose in favor of all and every one of his legitimate relations,
the testator sufficiently complies with the law, when after satis-
fying the legacy by him made to his natural child,.the balance
of his succession goes to one or more of his said legitimate rela-
tions in the proportion fixed by article 1473. It is clear, there-
fore, that, in this case, the disposition contained in the will in
favor of Emilie Prevost the testator's sister, by which she is in-
stituted his universal heir, is perfectly legal and valid, and that
she has a right to inherit under the will, to the exclusion of the
testator's other legitimate relations.

But the real question submitted to our solution by the counsel
on both sides, under their written agreement, is, whether the
plaintiffs are entitled to share equally with their sister the
amount which would proceed from the failure of the particular
legacies, or from their being reduced to the portion permitted by
law to be disposed of? or, in other words, is the universal lega-
tee entitled to the exclusive benefit of the failure of the parti-
cular legacies, or of their reduction ?

Article 1702 of the Civil Code provides that, " except in the
cases prescribed in the two preceding articles, *every portion of*
*the succession remaining undisposed of, either because the testator*
*has not bequeathed it either to a legatee or to an instituted heir, or*
*because the heir or the legatee has not been able, or has not been will-*
*ing to accept it, shall devolve upon the ligitimate heirs."* This arti-
cle is preceded by article, 1697, which says, that " *legatees under*
*an universal title, and legatees under a particular title, benefit by the*
*failure of those particular legacies which they were bound to dis-*
*charge."* From the words of the first of these articles, it seems

that the intention of the law-maker was, that the legitimate heirs of the testator should inherit from him any portion of his succession remaining undisposed of, only in case said testator had not bequeathed it to a legatee or *to an instituted heir*, or when such heir or legatee has not been able or willing to accept it; and from the terms of the second, it is manifest that when a legatee is bound to discharge any particular legacy, he is entitled to benefit by the failure of such legacy. We have already shown that, under arts. 1599 and 1602 of the Civil Code, the universal legatee, by the death of the testator, *is seized of right of the effects of the succession*, without being bound to demand the delivery thereof, when the testator has left no forced heir; and art. 1603 informs us, that *the universal legatee*, even when he concurs with a forced heir, *is bound to discharge all the legacies*, saving the case of reduction, and, *a fortiori*, must he do so when he does not concur with any forced heir. See Toullier, vol. 5, No. 679, who says: "*C'est lui qui acquitte seul tous les legs, quand même il serait en concours avec un héritier légitimaire.*" Ibid. Nos. 507, 557. Ibid. vol. 4, Nos. 515 and 552. It is clear, therefore, that in this case, there being no forced heir, the universal legatee is bound to discharge all the legacies; that she would be bound to discharge the legacies complained of by the plaintiffs, if the legatees were capable of receiving; and that, in case of their failure, she should be entitled to take them as a part of the succession, or, in the terms of the will, as a part "*de la généralité des biens*" left by the testator.

But this question, which is perhaps a new one in our jurisprudence, does not appear to be subject to any difficulty in the country from which we have borrowed the greatest part of the provisions of our Civil Code; and although articles 1697 and 1702 are not found embodied in the Napoleon Code, and seem to have been adopted by our legislature with the view of adding these provisions to those contained in the French Code on the same subject, we have thought proper to consult several French commentators, whose opinions we have found to be unanimous upon this important point of our laws. Denizart, in his collection of jurisprudence, vol. 1, *verbo* Accroissement, § 4, says: "*Quant aux légataires universels, en général les legs particuliers*

*caducs leur appartiennent à titre d'accroissement, préférablement à l'héritier ;"* and he cites a case in which the question was settled contradictorily with the heirs of a testatrix. Touillier, vol. 5, No. 677, says : *" Le droit de profiter de la caducité des legs, est attaché à la charge de les acquitter, dans le cas où ils ne seraient pas caducs. Il est naturel que ceux qui doivent supporter la charge de ces legs, en retirent aussi les avantages éventuels, &c.* This is also the opinion of Duranton, vol. 9, No. 495 ; and of Grenier, Traité des Donations, vol. 2, No. 349, who decides that, *" S'il n'y a point de legs universel, il est évident que la caducité tourne au profit des héritiers ab intestato ;"* and *" s'il y a un légataire universel, la caducité lui profite."* See also Merlin, Repert. vo. Légataire, § 2, in which this doctrine is fully investigated, in a case, in which, though somewhat different from that under consideration, his opinion coincides with those of the authors already quoted; and Touillier, Nos. 507 and 679, who expresses positively his opinion that : *C'est le légataire universel qui recueille seul tous les legs caducs, même à l'exclusion du légitimaire, qui n'a rien à prétendre au delà de sa réserve."* and Sirey, vol. 9, Part 1, p. 303, who reports a case in which a similar opinion was expressed by the Court of Cassation. The provisions of our law on this subject are too clear and too positive to be disregarded, under the pretext of pursuing its spirit ; and, under our system, we feel no hesitation in concurring in opinion with the authorities above referred to, and in concluding that in case of the failure of the legacies made to Florestine Cécile and her co-legatee, or of their reduction, the universal legatee has a right to consider them as a part of the inheritance of the whole estate— *" de la généralité des biens,"* and that they must enure to her benefit.

But it has been urged by the plaintiffs' counsel, that the universal legatee, having set up, in her answer, that the dispositions contained in the will are legal and valid, and must be maintained, and having prayed that said will be executed in all its dispositions, this amounts to a renunciation on the part of the said universal legatee of the benefit of the failure of the particular legacies, and that, in such a case, such failure must enure to the benefit of the heirs. Hence, it has been ingeniously ar-

gued, that the doctrine entertained by the authors relied on by the appellants' counsel, though perhaps incontrovertible even under our laws, is only applicable to the case in which the universal legatee himself seeks to contest the validity of the particular legacies, and not to a case in which he consents to the execution of the will; and the appellees' counsel has referred us to the case of Mirandol, quoted and argued on at full length by Merlin, Rèpertoire, *verbo* Legataire, § 2, in which the principle is repeatedly recognized: " *Que lorsque l'héritier institué consent à l'éxécution du legs particulier, le légataire particulier n'est point recevable à contester l'intérêt de l'héritier légitime, qui attaque son legs.*" This doctrine is certainly correct, and we should be disposed to adopt it, as being within the true spirit, and even within the letter of our article 1702, for, then, the amount of the particular legacy would remain *undisposed of*, not only because the particular legatee would not be able to receive it, but also because, the instituted heir being willing to take it as a part of the whole of the succession, this acquiescence on his part cannot strengthen or in any manner perfect the right of the particular legatee, who is incapable of receiving; and as it is obvious that the consequence of such an acquiescence would be, under art. 1702, that the portion of the succession so undisposed of, or repudiated by the universal legatee, would devolve upon the legitimate heirs. It is also clear that the particular legatee has no right to benefit, when his legacy must fail as an illegal one, from the unwillingness or refusal of the instituted heir to disturb it, and to reap the fruits of an illegal disposition to the prejudice of the heirs. But here there is no such abandonment of the right of the universal legatee. The latter, on the contrary, sets up the exception that the plaintiffs have no right to attack the will, because *she is the only person entitled to claim the whole* of the estate; and she does thereby virtually claim the whole succession. It is true she denies the allegations contained in the plaintiffs' petition, asserts that all the dispositions contained in the will are legal and valid, and prays that said will be executed; but this is only for the purpose of joining issue with the plaintiffs on the allegations of the petition, and on the supposition that those allegations cannot be established. There

is a vast difference between the issue joined on the facts alleged in support of the plaintiffs' demand, and a consent, on the part of the universal legatee, to the execution of the legacies, after they have been shown to be illegal. *Non constat* that they are illegal, because the plaintiffs say so ; and it seems to us that the instituted heir does not go too far in maintaining that, if said legacies are proved to be illegal and void, the plaintiffs have no interest, because the same must devolve upon the universal legatee ; and this issue necessarily called for by the plaintiffs' petition, cannot, in our opinion, be construed as an acquiescence in the illegal dispositions, nor as a consent that the legatees should take the legacies, notwithstanding their illegality.

Furthermore, the universal legatee is only represented in this suit by an agent, who, unless with sufficient and special powers, cannot, in the defence of the rights of his principal, make any abandonment or renunciation of her said rights ; and it is obvious that the universal legatee would not be bound by the unauthorized acts of her agent, though found in, or resulting from allegations or confessions made in judicial proceedings.

It is, therefore, ordered and decreed, that the judgment of the Court of Probates be annulled and reversed ; and that the plaintiffs' petition be dismissed, with costs in both courts.

*St. Paul* and *H. R. Denis*, for the plaintiffs.

*Graudmont, C. Janin,* and *Soulé,* for the appellants.