SimoN, J.
The petitioner represents, that she and her sister Catalina Ripoll are the only heirs of Sebastian Ripoll, their brother, who died in New Orleans, on or about the 10th of April, 1836. That the deceased was possessed of a very large estate, composed of real and personal property and slaves, which were inventoried after his death, amounting to a very large sum. That as the sisters of the late Sebastian Ripoll, otherwise known by the name of Francisco Ballesta, they are entitled to inherit from him, each the undivided half of his entire succession ; but that it appears, that the said Sebastian, in 1832, made a will under the fictitious name of Francisco Ballesta, by which lie gave and bequeathed to a natural child of his, named Teresa Moriña, the defendant, the whole of his estate.
She further avers, that the deceased, during his last illness, dictated another will to a notary public, by which he acknowledged the petitioner and his sister as his nearest relations, and as such entitled to his inheritance, but that the approaching death of the testator prevented him from signing the same.
That after the death of Sebastian, the first will was admitted to probate, in the Probate Court of New Orleans, and his succession opened under the fictitious name of Francisco Ballesta, although the parties well knew his real name to be Sebastian Ri-poll, which could only have been done with a view to conceal his death from his heirs ; and that Térésa and her husband took possession of the estate of said deceased, contrary to law, &c.
The plaintiffs further say, that the will made under the name of Francisco Ballesta is null aud void for reasons assigned in the *554 petition, to wit, 1st. Because it was made under a fictitious name ; 2d* Because it was not. written as dictated , 3d. Because it was written in French, which language the testator did not understand ; 4th. Because Térésa Moriña, being his natural child, was incapable to take his succession as heir, and was at most entitled to alimony.
They further state, that among the real estate of the said succession, there was a certain lot described in the petition, which was subsequently sold by Térésa and her husband te the Third Municipality; — another lot, also therein described, which was sold by the same persons to one Juan de Meyra, after having mortgaged the same to Christoval More] and Bernard Marigny, and which was subsequently seized and sold by virtue of a judgment against said Meyra, &c.-all which sales and mortgages it is alleged, are null and void as to the plaintiffs and ought to be declared of no effect.
The petitioner therefore prays, that the universal legatee, Té-résa, her husband, and all the vendees and mortgagees of the said property, as also Catalina Ripoll, her sister, may be made defendants in this suit; that a curator, ad hoc, may be appointed to represent and defend the latter; that the petitioner be declared to be the lawful heir, for one undivided half of the estate of the deceased ; that all the sales and mortgages above mentioned be declared null and void ; that she be recognized as the owner for one-half of the said property and of the whole estate ; and that Térésa Moriña and her husband be decreed to restore to her, in integrum, her portion of the property of the succession, and to account for the rents and profits; and that the purchasers of the properly be also condemned to restore it, or its real value, with rents and profits, &c.
The defendants severed in their answers. Some of them filed divers exceptions, which were subsequently withdrawn, waived,- or overruled ; but they all answered separately to the merits, as' follows: '
Térésa Moriña and her husband pleaded the general issue. Catalina Ripoll, through her curator, ad hoc, joined the plaintiff against all the defendants, adopted all the allegations and aver-ments of the petition, and prayed for the same judgment in her *555 favor as originally prayed for; and further, that a partition of the estate may be made between herself and the plaintiff, in equal portions, <fec. The Third Municipality first admitted the purchase of the lot for $5000, by sale made to them by Teresa Mo-riña and her husband ; but further averred that, at the time of the said sale, there was a judgment of the Probate Court recognizing the vendor as the testamentary heir of Francisco Bal-lesta, and as being entitled to be put in possession of the property. They further say, that the lot was purchased to improve the Municipality and open Moreau street; that said opening was necessary ; that in such case, the plaintiff can have no action against them for the lot which now belongs to the public ; and after praying that the plaintiff’s demand may be rejected, they call their vendors in warranty to defend this suit, &c.
All the other defendants joined issue by pleading divers matters in avoidance of the plaintiff’s action, and in explanation of the origin of the debts for which mortgages were given ; and by joining the defendants in asserting and maintaining, that the sale from Teresa Moriña to Juan de Meyra was legal, and vested .the latter with a good and valid title to the property in dispute, and praying accordingly.
Judgment was rendered below in favor of the plaintiff and her sister Catalina, recognizing them to be the legal heirs of Sebastian Ripoll, each for one-half of his succession, and condemning Térésa Moriña to pay to them jointly the sum of $20,000, being the price of the real estate alienated, with interest, and to deliver to them all the property belonging to the estate, not alienated previous to the bringing of this suit, or, in default thereof, to pay a further sum of $8400, being its appraised value. But judgment was also rendered in favor of the other defendants, purchasers of the property or mortgagees on the same, against the claims set up in the petition against the said parties severally ; and from this judgment the plaintiff and her sister Catalina have both appealed.
We are satisfied from the evidence, that the plaintiff and Catalina are the sisters of the deceased, and that they are his nearest legitimate relations legally entitled to inherit from him. He had assumed in Louisiana the name of Francisco Ballesta, but his real name was Sebastian Ripoll, as shown by the testimony of divers *556 witnesses, who, having known him in this State under the name of Francisco Ballesta, say, that he was the same person they knew in Spain as Sebastian Ripoll. He was bom in Cadagues, province of Gerona in Catalonia, in the kingdom of Spain, was known by some of the witnesses from his infancy in his native country, and was afterwards known by them for a great number of years in Louisiana. The certificate of his death shows, that the defendant, Térésa’s husband, who was a relation of the deceased, well knew the fact, as he was born in the same place, and declared to the Register that “ Sebastian Ripoll alias Francisco Ballesta, a native of Cadagues in Catalonia, had died in the city of New Orleans, on the \Dtk of April, 1836, at five o'clock, A. M. aged about forty-three years," which corresponds with the testimony of the witnesses examined in Spain.
A projected will of the deceased written under his dictation by .a notary, on the 10th of April, 1838, (the day of his death,) but which could not be signed by the testator, was produced in evidence by the plaintiff. Said will establishes the facts, under the solemn declaration of the deceased, then on his death bed, not only that the plaintiff and Catalina were his sisters and his nearest relations, but that his real name being Francisco Sebastian Ripoll y Alloy, certain political reasons had caused him to assume in this city the name of Francisco Ballesta, under which he was generally known here. He states therein, that he was bom in the town of Cadagues in Catalonia, names his parents, and gives his age as being about 43 years. This also agrees with the evidence taken in Spain.
The defendant Térésa Morifía, who was born from an illegitimate connection between the deceased and one Francisca Mori-fía, his concubine, having been baptized by the curate of the church of St. Louis in New Orleans, on the 20th of February, 1819, was acknowledged, by the deceased as being his natural daughter ; he signed the certificate of baptism, in which the declaration is made, and also acknowledged her as such in his projected will of the J 0th of April, 1836, in which she was again instituted as one of his universal heirs, for one-half.
It further appears, that the first will of the deceased, in which the defendant Teresa Morifía, is instituted his universal heir and *557 legatee, was duly probated and ordered to be executed by the Court of Probates ; that she was ordered to be put in possession of the estate; and that an inventory thereof was made accordingly. Teresa was put in possession of the succession by the executor, in 1837, immediately after having received the order of the Probate Court.
With regard to the defence set up by the Third Municipality, it is admitted in the record, that the lot mentioned in the answer of the said Municipality, and in the deed annexed to it, was bought by the Municipality, in accordance with a resolution of the council thereof, from Teresa Morilla and her husband ; which resolutions were made and acted on for the opening of Moreau street for the benefit of the public, and that the price was paid according to the deed; and it is further admitted that Moreau street has been opened, and that a portion of the lot has been used for that purpose.
Under this state of facts, several questions present themselves ; to wit: 1st. With regard to the validity of the will of 1832, by virtue of which the estate of the deceased was delivered to the universal legatee therein named.
2d. What is the extent of rights of the universal legatee under said will, she being the testator’s acknowledged illegitimate child ?
3d. Can those who have purchased property from Teresa Mo-rilla, who was the apparent heir or universal legatee of the deceased, and who had been put in possession of the estate as such, retain possession of the real estate against the claim of the legal and actual heirs ?
4th. Can the plaintiffs disturb the sale made by the apparent heir to the Third Municipality, when it is shown and admitted that such sale was made for public purposes 1
I. The will under consideration appears to be in proper form as a nuncupative testament by public act; it is not defective in any of the legal requisites, except that the testator, whose name was Sebastian Ripoll, caused it to be executed, and signed it under the assumed name of Francisco Ballesta. This last name was not assumed by the testator for the first time when he made his will, for he had always been known in Louisiana under it; so much so, that two of the witnesses who knew him in Spain by *558 the name of Sebastian Ripoll, testify that, having known him here about thirteen years before his death, he was then called Francisco Ballesta. The deceased himself, it is true, declared his real name to the notary who made his second will, (produced in evidence by the plaintiff,) but he also declared that he was generally known in this city under the name of Francisco Ballesta, which certain political reasons had caused him to assume ; and this shows, that said will was not made under a false name, in fraudem legis, or with the intention of frustrating the rights of his legitimate heirs, as contended. The change of the testator’s name was the result of circumstances of a political nature ; he may have thought it necessary at a certain period to assume another name than that which he had when he came to Louisiana, and as he had made himself known under it here, it is not astonishing that he continued to bear it, and that he caused his will to be made under a name under which he was generally known. Under the circumstances disclosed, we are not prepared to say, that the testator’s signature of an assumed name is sufficient in itself to vitiate the will; it is at least a sufficient descriptio personen, and perhaps more so here, than if he had signed it under his real name.
II. The disposition by which the testator gave the whole of his estate to Térésa Morifia, who was his acknowledged illegitimate child, is not void in (oto, but is only subject to be reduced to the quantum which the law permitted the testator to dispose of. She had been acknowledged by him in the registering of her birth or baptism, as being his natural child; this was a sufficient acknowledgment under the laws then in force ; (Civ. Code of 1808, p. 48, art. 25 ;) it would even be sufficient under our present laws. Civ. Code, art. 221. Article 1473 of our Code says, “ that when a natural father has not left legitimate children or descendants, the natural child, acknowledged by him, may receive from him, by donation inter vivos or mortis causa, one-fourth of his property, if he leaves legitimate brothers and sisters or descendants from them.” Here, the testator disposed of the whole in favor of Térésa Morifia ; but under article 1489 of the Civil Code, 11 any disposal of property, whether inter vivos or mortis causa, exceeding the quantum of which a person may legally *559 dispose, is not null, but only reducible to that quantum.” Thus it is clear, that the defendant Térésa had a right to inherit one-fourth of her natural father’s estate ; (Prevost v. Martel,10 Rob. 512. Compton et al. v. Prescott et al., ante, p. 56 ;) and that to the extent of her said fourth in the undivided property, by her sold to the other defendants, the title by her transferred must at least be maintained.
III. The purchasers of the property in dispute contend, however, that having derived their title from the apparent, of reputed heir, or universal legatee of the deceased, without their being aware of the existence of any collateral heir, or of any right in any other person to inherit from him, they cannot suffer, and that their title ought to be maintained, leaving the plaintiff and the other heir to their recourse against the apparent heir for the reimbursement of the price. This is the purport of the judgment appealed from, but it seems to us this question cannot be subject to much difficulty.
There are no maxims or rules better understood in the civil law than these: “ Id quod nostrum est, sine facto nostro ad alium transferri non potest.” L. 2, if. De regulis juris; and “ Nemo plus juris in alium transferre potest quam ipse habet” L. 54, Ibid. Our Code, art. 2427, declares, that the sale of a thing belonging to another person, is null; and art. 3268, informs us, that such as only have a right that is suspended by a condition, and may be extinguished in certain cases, can only agree to a mortgage subject to the same conditions, and liable to the same extinction. Here, it is true, Térésa Moriría, who had been put in possession of the estate, was the only apparent Heir of the testator under the decree of the Probate Court ordering the will to be executed, and might have been perhaps fairly supposed to be the exclusive owner of the property purchased; but the purchasers might have also used due precautions to ascertain the extent of her rights. The true name of the testator was then known, not only from the registering of his death, but also from the projected will, which he had been unable to sign. The registering of the universal legatee’s birth was a matter of public record; it showed that she was the acknowledged natural child of the testator, and that therefore, her rights as such were *560 limited, and even contingent to a certain extent. She couldnot be exclusively entitled to inherit, if the testator had left legitimate relations in any degree; (Civ. Code, arts. 1473, 1474;) and this, in our opinion, was in some manner sufficient to put the purchasers on their guard.
But be this as it may, it does not 'seem to us, that the purchasers of the property in dispute can, under any circumstances, have acquired any greater right, or any better title to it than their vendor herself had. She was only the owner of one undivided fourth of the lots, and she could not validly transfer to them any part thereof, beyond her said fourth. Toullier, vol. 7, No. 31, says : “ Quant au.v actes d1 alienation, de constitution d'hypothéque, de servitudes, etc, faits par le propriétaire apparent, ils ne nuisent point au vrai propriétaire reintégre dans s es droits; ils sont résolus, ils s’évanouissent avec le droit de celui qui les a faits, et qui n’a pu transferer a autrui plus de droits qu’il n’en avail lui méme.” See also his appendix to vol. 7, p. 604, in which he controverts the doctrine adopted by Merlin on this subject; and vol. 4, Nos. 288 and 289, in which his opinion on this question is fully developed, under the maxims of the Roman law above quoted. Troplong, Yente, No. 960, and Hy-pothéques, No. 468, maintains the same doctrine ; and so do Du-ranton and others. It is true, Merlin, in his Répertoire de Jurisprudence, verbo, Succession, sect. 1, § 5, No. 2, and in Q,ues-tions de Droit, verbo, Héretíer, § 3, seems to entertain an opinion somewhat different, on the authority of certain decisions of the Court of Cassation on which he comments; but he only establishes a distinction, and requires conditions which are not recognized by Toullier, to wit, that a sale of this kind should be valid, provided the parties be in good faith, and that its invalidity should depend upon the degree of bad faith attending the execution of the contract, in either of the parties or in both. But we are not ready to introduce Merlin’s doctrine on this subject into our jurisprudence. We think it is not sound; it violates one of the fundamental rules upon which the right of ownership is based, and we agree with Toullier, loco citato, that all that the law has done in favor of a purchaser in good faith, is, to give him the benefit of Ike prescription of ten and twenty years, though *561 the property so purchased may belong to another person. Civ. Code, art. 3442, 3450, and 3451. “ Hors ce cas,” says Toullier, vol. 4, No. 288, “ la bonne foi de l’acquéreur doit cider au droit de propriété du parent plus proche, du cohéritier, du legataire, 6pc.” Thus, we conclude, that Térésa Moriría, in selling the real property of the succession to her co-defendants, has transferred to them no title beyond her fourth undivided portion ; and that the plaintiff and her sister are entitled to recover the three other fourths, unless other circumstances exist- which may give validity to any of the sales, as may perhaps be the case with regard to the purchase made by the Third Municipality, which will be the subject of our next inquiry,
IV. The sale of the lot to the Third Municipality was intended for public purposes; it was to open Moreau street, and the lot was bought in accordance wilh a resolution of the Council, which resolution was adopted for the benefit of the public. Under art. 2604, and the following of the Civil Code, the succession was bound to suffer the compulsory transfer or sale of the lot; and had the heirs been present in the State and in possession of the property, it is clear, that they could not have prevented it,, as they were bound to yield the property to the community, if it had become' necessary for the general use. The only difference here is, that instead of exercising their right of compulsory transfer, the Municipality purchased the lot from the apparent owner, but it was for the benefit of the pirblic and there was no necessity, since a resolution had been passed to that effect, to require the fulfilling of formalities which are only to be resorted to when the owner refuses to sell, or demands an exorbitant price. Civ. Code, art. 2605. No proof has been adduced to show that the price paid for said lot was under its real value. On the contrary, the inventory of the estate made in April, 1836, shows the lot to have been then estimated at $1200, whilst the same lot was sold, in December, 1837, to the Municipality for $5000. The apparent heir received the price, and we think that, under the terms of art. 2611, to wit, “ If after the expropriation, any individual pretends that he had rights respecting the thing, either as owner or as creditor, he shall have recourse against the person who received the price,” which is clearly applicable, under the *562 admissions, to the present controversy ; the only recourse of the appellants is against the apparent universal legatee, for three-fourths of the price in the general settlement of the estate.
On the whole, we must conclude, that the rights of the parties to this controversy should be settled as follows: 1. The sisters of the deceased should recover together three-fourths of his succession in general. 2. The portion of the universal legatee should be limited to one-fourth of the estate. 3. The title transferred to the Third Municipality should be maintained, leaving the heirs to their recourse against the universal legatee for the reimbursement of three-fourths of the price in the general settlement of the estate, 4. The title transferred by the universal legatee to Juan De Meyra, and afterwards from the Sheriff to Stewart Haynes, and the mortgages by her given to C. Morel and B. Ma-'rigny, on the lot described in the petition, should be cancelled and set aside for three-fourths thereof, and maintained for one undivided fourth, subject to be divided between the owners thereof according to law, and leaving the purchasers to their recourse in warranty for the said three-fourths of the lot against their warrantors in due course of law. 5. The balance of the estate, yet in the hands of the universal legatee, and undisposed of, should be divided in the same manner, subject to the final settlement of the succession between the parties entitled thereto.
It is, therefore, ordered and decreed, that the judgment of the District Court, so far as it recognizes the right of the appellants to three-fourths of the succession of Sebastian Ripoil alias Francisco Ballesta, and so far as it maintains the title transferred by the universal legatee to the Third Municipality with regard to the lot described in the petition, be affirmed; that the same be reversed and avoided in all other respects; and- this court proceeding, with regard to all those parts of the judgment appealed from, which have been annulled, to render such judgment as, in its opinion, should have been given below, it is ordered and decreed, that the appellants recover three-fourths of the estate of the deceased in general; that the universal legatee be maintained in her right and title to one-fourth thereof; that the succession be divided and settled accordingly by subsequent proceedings before the inferior tribunal; that the appellants recover of the *563 actual possessor thereof, three undivided fourths of the lot of ground sold by the universal legatee to Juan I)e Meyra, and subsequently transferred by the Sheriff to Stewart Haynes; and that this case be remanded to the court, a qua, for further proceedings for the final adjustment of the rights of the parties against each other, under the legal principles recognized in this opinion. The costs in this court to be borne by the defendants and appellees.
Schmidt and Roselius, for the appellants.
Canon, Morel, F. Haynes and Soule, for the defendants.